641 P.2d 1110 (1982)
In re Leland C. DAVIDSON Trust.
FIRST NATIONAL BANK IN BARTLESVILLE, Bartlesville, Oklahoma, Trustee of The Leland C. Davidson Trust, Appellant,
v.
Donna S. FAULKNER, Executrix of the Estate of Miriam S. Davidson, Deceased, and Shriners Hospital for Crippled Children, Tampa, Florida and Baker University of Baldwin City, Kansas, Appellees.
No. 54878.
Supreme Court of Oklahoma.
February 23, 1982.
James W. Connor, Selby, Connor & Coyle, Bartlesville, for appellant.
Richard Kane, Kane, Kane & Kane, Bartlesville, for appellee, Donna S. Faulkner.
Dale G. Savage, Williams, Landman & Savage, Tulsa, for appellees, Shriners Hospital for Crippled Children, Tampa, Florida and Baker University of Baldwin City, Kansas.
*1111 DOOLIN, Justice:
The questions presented for resolution evolve around an inter vivos trust and subsequent probate of an estate effecting part of the trust.
Leland Davidson and Miriam Davidson were married in 1927 and remained husband and wife until Leland died in 1978. Prior to his death, Leland executed an inter vivos trust, naming himself as trustee and appellant (Bank or Trustee) as successor trustee. The terms of the trust divided his assets into Trust A and Trust B with Miriam being granted a general power of appointment over the assets in Trust A. Miriam never exercised that power. She died in 1979.
Appellee, Donna Faulkner (Executrix), was named Executrix of Miriam's estate, and made written demand upon Bank that the estate tax owed by Miriam's estate should be paid and apportioned among the collateral beneficiaries of Trust A because the corpus of Trust A was included in Miriam's estate for tax purposes. Bank invoked the jurisdiction of the district court under 12 O.S. 1971 § 1651 requesting directions as to how it should proceed. Executrix, meanwhile, paid all estate inheritance taxes, federal and state, and demanded reimbursement from Bank prior to disbursement of the trust to the beneficiaries.
The trial court ruled both state and federal taxes were subject to apportionment *1112 and that Trust A was required to contribute. It also devised a complicated formula for determining the precise amount of contribution. Further, the trial court exempted charitable beneficiaries from contributing to the tax liability.

I
Bank argues the trial court exceeded its authority when it ordered the trust, and not the individual beneficiaries who are the ultimate recipients of trust proceeds, to contribute to the federal tax liability.[1] It argues application of 25 U.S.C., § 2207 on apportionment:
"... if any part of the gross estate on which tax has been paid consists of the value of property included in the gross estate ..., the executor shall be entitled to recover from the person receiving such property ... such portion of the total tax paid as the value of such property bears to the taxable estate. If there is more than one such person, the executor shall be entitled to recover from such persons in the same ratio ... ." (Emphasis Bank's).
Bank notes one federal case[2] which interpreted 26 U.S.C. § 2206, (§ 2206 is similar to § 2207 but deals with life insurance rather than powers of appointment):
"The liability of life insurance beneficiaries for an estate tax does not exist and cannot exist until the tax has been paid ..." (Emphasis Bank's).
Simply stated, Bank argues it would be improper to require it as trustee to demand contribution from beneficiaries before the actual tax is determined and paid; it should not have to ascertain which beneficiary should contribute and to what extent. It argues a trust's only obligation is to terminate the trust and distribute to the ultimate beneficiaries their proportionate shares of the trust corpus. It further argues it was given no authority in the trust instrument to hold the trust proceeds until the tax liability of each beneficiary is determined.
Executrix counters she has no trouble accepting Bank's argument that the burden of payment of the apportioned part of federal taxes rests upon the person, or persons, receiving such property. She notes, however, that 22 U.S.C. § 6324 creates a special lien for estate taxes upon any transferee of property included in the taxable estate, and makes said transferee personally liable for the tax to the extent of the property received.
Thus we find both Bank and Executrix in agreement that the beneficiaries, not the trust, should bear the responsibility for payment of the apportioned estate tax. We agree. We also agree with Bank that the Executrix should bear the responsibility of determining the apportioned share of tax which each beneficiary should pay, and to demand payment of them individually. The Bank's only authority upon demise of the trustor was to terminate the trust and distribute the assets to the beneficiaries. It had no authority to determine the apportioned tax, to pay out such tax to the Executrix or to withhold same from the beneficiaries. Federal statutes provide remedies should the beneficiaries refuse to contribute their share of the federal estate tax liability.

II
We believe the question of apportionment to be a state question.[3]
Bank contends the apportionment of estate tax in Oklahoma is unclear at this time, and seeks clarification from this Court.
*1113 Historically we note, prior to 1965, the tax levied upon the assets of an estate was an "estate" tax, rather than an "inheritance" tax, the difference being that the former was a tax on the "transfer" and the latter a tax on the "receiving" of assets. In 1965, the State Legislature adopted the Uniform Estate Tax Apportionment Act (58 O.S.Stat. 1965, § 2001 et seq.). This Act was repealed by the 1969 Legislature. In 1974, the Legislature passed 68 O.S.Supp. 1974, § 825 (the Act),[4] and the trial court in our case used it to apportion the estate taxes due.
Executrix contends § 825 is clear and unambiguous on its face, while Bank argues its unconstitutionality on grounds the sections relating to apportionment are not contained in the title to the Act as required by the state constitution (Art. V, § 57) and cases thereunder.
The title to the act in question contains only one reference to the subject matter, to-wit: "An act relating to taxation ...."[5] It amends 68 O.S. 1971, § 825, which was a product of the 1965 Legislature, Chapter 250, O.S.L. 1965. The title to the original 1965 Act[6] contains many references to the subject matter, including "levying a tax upon the transfer of the net estate of decedents" ... "defining terms," ... "providing for deductions and exemptions," ... "fixing liability of persons and corporations for tax."
If the title to an original act is sufficient to embrace the matters contained in an amendatory act, the sufficiency of the title of the latter need not be inquired into. In the Matter of the Habeas Corpus of Edward E. Wells, 335 P.2d 358 (Okl.Cr. 1959).
We find the subject matter of the 1974 amendment (the Act) is sufficiently contained in the title of the 1965 Act, and thus is not an infringement on the constitutional qualifications of title and subject matter; the act is clear and unambiguous on its face.
Having found § 825 constitutional, clear and unambiguous on its face, we need not respond to appellant's contention that estate taxes shall be paid out of the residue of the estate, that law having been supplemented by § 825.

III
Appellant argues the trial court erred in exempting the charitable beneficiaries from contributing to the estate tax liability. He argues federal law does not exempt charities from paying their share of trust proceeds[7] and that state law determines whether bequests to charity and to the surviving spouse bear any portion of the estate tax.[8] He also cites an United States 10th Circuit Court case involving Oklahoma *1114 law[9] for the proposition that spouses and charities are not exempt from contributing to the estate tax liability.
Appellee counters by citing from "Construction and Application of Statutes Apportioning or Prorating Estate Taxes," 71 A.L.R.3rd 247, for the proposition that charitable beneficiaries are not liable for estate taxes when the entire value of the charitable gift is allowed as a deduction for estate tax purposes. In the instant case both the state and the federal governments allowed the charitable deductions in the estate tax returns. They both have therefore found the charitable gifts were deductible items.
The charities acknowledge that this is a case of first impression in Oklahoma, and that Oklahoma statute is silent on the question. They argue that as they are tax exempt and do not contribute to the estate's tax burden, they should not be required to bear a portion of the tax liability. They also agree that state law, not federal law, governs the outcome of this issue.
Our neighboring state of Missouri provides convincing argument:
"Absent statutory direction or an expression of intent on the part of the testator to the contrary, broad equitable principles place the burden of federal estate tax on the property which generates the tax, and exonerates therefrom property which does not."
In re: Estate of Carl Albin Wahlin, 505 S.W.2d 99 (Mo. App. 1973).
We find the charities shall not be liable for any estate taxes.

IV
The final question presented for resolution is the trial court's order of apportionment of the estate taxes. It took the taxes attributed to the trust ($62,210.85) and the estate ($144,584.18), as if no deductions existed, and as if they were separate entities. The two were added together and subtracted from the tax as a whole as shown by the evidence ($223,461.36), leaving a balance of $16,666.33. It then determined the proportion of the trust estate ($264,461.36), to the gross estate ($716,164.38) and arrived at a percentage of about 37%. It then determined the proportion of the gross estate minus the trust ($451,790.36) was to the gross estate and arrived at a percentage of about 63%. It then multiplied each percentage times the excess estate tax to arrive at each party additional estate tax share, with the end result that the trust property owed taxes of $68,363.28 ($62,210.85 + $6,152.43) and the estate owed a total estate tax of $155,098.08 ($144,584.18 + $10,513.90).
Both parties disagree with this calculation and propose their own methods.
We feel a more equitable calculation, in keeping with the statutory mandates, would be simply to determine each beneficiary's proportionate share of the taxable estate, then multiply that percentage times the total estate tax due to arrive as each beneficiary's share of those taxes. For example, assume beneficiary Donald G. Davidson is to receive $88,374.68 from the trust. That represents about 14% of an estimated federal taxable estate of $628,053.23. That percentage multiplied times the total federal estate tax due on the estate (estimated to be $150,057.56) determines the amount of federal estate tax that shall be paid by Donald Davidson ($21,008.05). The same method of calculation shall be utilized in determining proportionate share of the estate tax due the State of Oklahoma.
We decide not what the amount of the tax or rate of tax is to be, for that is a function of the Tax Commission. Our opinion is to how such tax due shall be apportioned among beneficiaries.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
IRWIN, C.J., BARNES, V.C.J., and HODGES, SIMMS, HARGRAVE and OPALA, JJ., concur.
NOTES
[1] Executrix argues that federal law governs over state law in the matter of apportionment of taxes. See In the Matter of the Construction of the Will of Albert L. King, Deceased, 22 N.Y.2d 456, 293 N.Y.S.2d 273, 239 N.E.2d 875 (1968) and cases thereunder. Bank introduced the federal v. state argument in its Petition in Error but chose not to follow through in its brief. We therefore accept that proposition or error as admitted, and will not pursue it further.
[2] West Coast Life Insurance Co. v. Twogood, 82 F. Supp. 710 (1949).
[3] Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); cf. Tapp v. Mitchell, 352 P.2d 900 (Okl. 1960).
[4] "The tax on interests passing to collateral persons shall be apportioned in the proportion that the value of interest received by each collateral person bears to the total of all interests passing to all collateral persons."
[5] "An Act Relating to Taxation: Amending 68 O.S. 1971, § 825, as mended to Section 7, Chapter 206, O.S.L. 1973 (68 O.S.Supp. 1973, § 825); providing tables to be used in the computation of estate taxes: fixing operative date: and declaring an emergency."
[6] An Act relating to taxation; revising, amending and deleting obsolete language therefrom, and re-enacting the Estate Tax Law for the purpose of recodifying same as a part of the Tax Code: levying a tax upon the transfer of the net estate of decedents, in trust or otherwise, by gifts, legacies, inheritances, devises, successions or other transfers; defining terms; providing deductions and exemptions and fixing rates of tax; providing for assessment and collection of tax by Oklahoma Tax Commission and apportioning the revenue; fixing liability of persons and corporations for tax and fixing liens and penalties; requiring reports to be made and prescribing procedures and remedies to enforce act; declaring legislative intent that act be construed as amendatory of present laws; repealing 68 Oklahoma Statutes 1961, Chapter 22 (being Sections 988 through 1022) and all laws or parts of laws in conflict herewith and making provisions of act severable.
[7] Young Men's Christian Association v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924).
[8] Succession of Bright, 300 So.2d 614 (La. App. 1974).
[9] Thompson v. Wiseman, 233 F.2d 734 (10th Cir.1956).